UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | |
| GOTSPACE DATA EQUITY FUND, LLC | : | Chapter 11 |
| | : | |
| Debtor | : | Case No. 22-10044- FJB |
| | : | |

**OBJECTION TO THE UNITED STATES TRUSTEE'S
ASSENTED TO MOTION TO APPROVE STIPULATION
DISMISSING DEBTOR'S CHAPTER 11 CASE**

Pursuant to 11 U.S.C. §1112(b), Samuel B. Spitalny, Jacob L. Spitlany and Stephen Quillian (collectively the "Spitalny Creditors") object to The United States Trustee's Assented to Motion to Approve Stipulation Dismissing Debtor's Chapter 11 case, dated April 22, 2022 (Docket Entry 85) (the "Motion to Dismiss") based on (i) the Debtor's failure to meet its burden to proof that unusual circumstances exist and conversion is not in the best interests of creditors or the estate, and (ii) conversion to Chapter 7 is in the best interest of all creditors and the estate. The Spitalny Creditors move the U.S. Bankruptcy Court to deny the Motion to Dismiss, proceed with the evidentiary hearing on the U.S. Trustee's Second Motion to Convert the Chapter 11 Case to Chapter 7 (Docket Entry 47), and convert the Debtor's case to Chapter 7.

PRELIMINARY STATEMENT

Gotspace Data Equity Fund, LLC (the "Debtor") filed a voluntary Chapter 11 petition for bankruptcy (the "Petition") on January 14, 2022 (the "Petition Date"). Less than a year prior to the Petition Date, on February 15, 2021, the Spitalny Creditors, the Debtor and Nicholas Fiorillo ("Fiorillo") executed a certain $5,150,000 Confidential Promissory Note and Profit Sharing

1

Agreement (the "Note"), pursuant to which the Spitalny Creditors advanced $5,000,000 in cash to the Debtor for the purchase of Connecticut real estate. A copy of the Note is attached hereto as Exhibit A. The remaining $150,000 under the Note was to fund a commission due Stephen Quillian.

Subsequent to February 15, 2021, on August 6, 2021, the Spitalny Creditors advanced an additional $500,000 to the Debtor and Fiorillo, to fund the continuation of options to purchase Connecticut real estate. Thereafter, on August 20, 2021, the Spitalny Creditors advanced an additional $450,000 to the Debtor and Fiorillo to fund yet more continuations of options to purchase Connecticut real estate. As of August 20, 2022, the Debtor and Fiorillo owed the Spitalny Creditors no less than $6,100,000.

On September 3, 2021, the Spitalny Creditors sent the Debtor and Fiorillo a notice of default. On November 8, 2021, the Spitalny Creditors accelerated all amounts due under the Note, and demanded payment in full.

The Spitalny Creditors filed a lawsuit in the Massachusetts Superior Court entitled Samuel B. Spitalny, et al. v. Nicholas Fiorillo, et al., Civil Action No. 21-2894-H (the "State Lawsuit"), seeking recovery of all amounts due under the Note. A copy of the First Amended Complaint and Demand for a Jury Trial (the "Complaint") is attached hereto as Exhibit B. All Exhibits to the Complaint are collectively attached hereto as Exhibit C. As part of the State Lawsuit, the Spitalny Creditors filed a reach and apply action (the "Reach and Apply Action") against the Debtor, Fiorillo, and numerous entities affiliated with the Debtor and Fiorillo. Prior to the hearing on the Reach and Apply Action, the Debtor filed the Petition.

On February 2, 2022, almost two months after the Petition Date and following the U.S. Trustee's first Motion to Convert the Case to Chapter 7 (Docket Entry 13), the Debtor filed

bankruptcy schedules and a statement of financial affairs. According to the Debtor, as of the Petition Date, it held a mere $500.00 in cash. It also claimed that the Connecticut Attorney Title Insurance Company ("CATIC"), was holding $5,500,000 in escrow to fund the purchase of real estate. Subsequent to filing the Bankruptcy Schedules CATIC, through its in-house counsel, testified that it is not holding any funds in escrow for the Debtor, and further has never heard of the Debtor. In the Schedules the Debtor also claims that it holds accounts receivables totaling $3,650,000, yet has not identified the account debtors.

Over the past fourteen months the Debtor received $5,950,000 in cash. Since then it transferred all but $500 of the funds to unknown parties. When the Spitalny Creditors sought to enforce their rights, the Debtor sought refuge and the protection afforded by the U.S. Bankruptcy Code (the "Code"). Despite the obligations that go along with the protection afforded by the Code, and before any creditors can find out how the Debtor spent $5,950,000 in less than twelve months, the Debtor seeks to dismiss its bankruptcy case. The Debtor's bankruptcy case presents a host of highly unusual circumstances that justify the conversion of the case to Chapter 7, appointment of a Chapter 7 Trustee, a complete and thorough investigation of all transfers, and prosecution of turnover actions, preferential transfer actions and/or fraudulent transfer actions are in the best interest of the creditors and the estate.

## JURISDICTION, VENUE AND LEGAL BASIS FOR RELEIF

1. The U.S. Bankruptcy Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

4. The legal basis for relief includes 28 U.S.C. §§ 586(a)(3), 11 U.S.C. §§ 307 and 1112(b), and Fed. R. Bankr. P. 1017.

## RELAVANT FACTS

5. The Debtor received $5,950,000 dollars, during the eleven months prior to bankruptcy. Yet, based on Debtor's bankruptcy schedules it holds only $500, and refuses to disclose the recipients of the funds.

6. Despite the Debtor receiving the benefits of filing a Chapter 11 petition, it waited almost two months to file its Bankruptcy Schedules and Statement of Financial Affairs. It did so only after the threat of conversion to Chapter 7 was advanced by the U.S. Trustee in the first Motion to Convert.

7. Fiorillo, as the Debtor's only known member and manager, did not appear at the initial Section 341 meeting.

8. The Debtor claimed he could not appear at the rescheduled Section 341 hearing.

9. On the last possible date for the Section 341 hearing the Debtor finally appeared, and asserted that he was testifying "under duress".

10. Throughout the Section 341 hearing the Debtor refused to answer many of the questions posed by the U.S. Trustee, counsel for Ocean Development Partners, and counsel for the Spitalny Creditors.

11. Some of the answers to the U.S. Trustee's questions were not accurate. The Debtor claimed that CATIC holds $5,500,000 in escrow for the Debtor. We now know this is not true. Based on the sworn testimony of Walter Lombardi, in-house counsel at CATIC, the Title Insurance Company is not holding any funds for the Debtor. Furthermore, the Title Insurance Company has not heard of the Debtor. The Debtor refused to identify deposits and purchase and sale agreements

entered into by the Debtor. Based on limited evidence produced to date, there is no evidence that the Debtor paid a deposit or entered into any purchase and sale agreements.

12. The Debtor admitted in the Schedules and sworn testimony that it has never maintained books and records. The Debtor further admitted that it had not filed any tax returns.

13. Despite the U.S. Trustee's guidelines, the Bankruptcy Court's Local Rules of Bankruptcy Procedure, and the U.S Bankruptcy Court's Orders dated January 18 and January 19, 2022 (Docket Entries 4 and 6), the Debtor has never filed (i) documents requested in the U.S. Trustee's initial debtor interviews, (ii) copies of the Debtor-in-Possession's bank accounts, or (iii) monthly operating reports.

14. On March 9, 2022, the U.S. Trustee filed the Second Motion to Convert (Docket Entry 47) (the "Motion to Convert"). A non-evidentiary hearing was held on April 5, 2022, to consider the Motion to Convert. On the same day, April 5, 2022, the Bankruptcy Court entered an order finding that cause existed to convert the Debtor's case to Chapter 7 based on (i) Debtor's gross mismanagement of the estate, (ii) unexcused failure to satisfy timely reporting submissions, (iii) failure to attend the meeting of creditors without good cause, and (iv) failure to timely provide information requested by the U.S. Trustee (Docket Entry 71) (the "Order to Convert"). The Bankruptcy Court scheduled an evidentiary hearing for April 19, 2022, to consider evidence and arguments from the Debtor under 11 U.S.C. §§1112(b) and 1112(b)(A). The April 19, 2022 hearing was continued to April 28, 2022.

15. The U.S. Trustee and the Debtor entered into a Stipulation and Agreed Order Resolving the United States Trustee's Motions to Convert the Debtors' Chapter 11 Cases to Chapter 7 and Cancelling April 28, 2022 Evidentiary Hearing (the "Stipulation"). The Motion to Dismiss seeks approval of the Stipulation, and dismissal of the Debtor's Chapter 11 case.

RELAVANT LAW

16.     Section 1112(b) of the U.S. Bankruptcy Code (the "Code"), states in relevant part upon the request of a party in interest the Bankruptcy Court shall convert a case under Chapter 11 to a case under Chapter 7, or dismiss the case, whichever is in the best interests of the creditors of the estate, for cause.  11 U.S.C. §1112(b) (2021).  The term "cause" includes, without limitation (i) substantial loss to the estate and the absence of a reasonable likelihood of rehabilitation, (ii) gross mismanagement of the estate, (iii) unexcused failure to satisfy timely any filing or reporting requirements established by the Code or rule applicable to Chapter 11 cases, (iii) failure to timely provide information reasonably requested by the U.S. Trustee, (iv) failure to file tax returns due after the date for the order for relief, (v) failure to pay fees and charges required under 28 U.S.C. Chp. 123.  11 U.S.C. § 1112(b)(4) (2021).

17.     Pursuant to Section 1112(b)(1) of the Code, when the Bankruptcy Court considers a motion to convert to Chapter 7, and examines the grounds for cause, it must consider the totality of the circumstances. See  In re Baribeau, 603 B.R. 767 (Bankr. W.D. Tx. 2019), citing Matter of T-H New Orleans, L.P., 116 F.3d 790, 802 (5th Cir. 1997).  Once the moving party demonstrates cause, conversion is mandatory unless the debtor can prove (i) conversion is not in the best interests of creditors of the estate, and (ii) (1) a reasonable likelihood that a plan will be confirmed in a reasonable time, (2) "cause" for conversion is something other than a continuing loss or conversion of the estate, and (3) (A) there is a reasonable justification for the Debtor's act or omission, and (B) such act or omission will be cured within a reasonable tile See 11 U.S.C. § 1112(b)(2)(A) and (B); In re Baribeau, 603 B.R. 767, 802; and In re Delta AG Grp., LLC, 596 B.R. 186, 197 (Bankr. W.D. La. 2019).

18. Upon a finding of cause for conversion, the burden shifts to the debtor to specifically identify "unusual circumstances establishing that converting the case is not in the best interest of creditors or the estate." See 11 U.S.C § 1112(b)(2). See also In re Baribeau, 603 B.R. 767, 802; and In re McQuillen Place Co., LLC, 609 B.R. 823, 829 (Bankr. N.D. Ia. 2019).

19. Under Section 1112(b), if the Bankruptcy Court determines that cause exists it may convert or dismiss the case. When considering between dismissal and conversion of a Chapter 11 case the Bankruptcy Court must determine whether conversion, or dismissal is in the best interest of creditors and the estate. In re McQuillen Place Co., LLC, 609 B.R. 823, 829; see also In re Sandia Resorts, Inc., 562 B.R. 490, 495 (Bankr. D. N.M. 2016). The Code does not identify factors to consider when determining what is in the best interests of creditors and the estate. Lakefront Investors LL v. Clarkson, 484 B.R. 72, 82 (D. Md. 2012). Instead, the Bankruptcy Court shall consider the practical implication of conversion on all parties. In re Sandia Resorts, Inc., 562 B.R. at 495.

20. A number of Bankruptcy Courts and appellate courts have considering the following factors when deciding whether conversion, versus dismissal, is in the best interests of the creditors and estate: (1) receipt of preferential transfer by some creditors, (2) receipt of fraudulent transfers by some creditors, (3) equality of distribution to creditors, (4) potential loss of rights if the case is dismissed, (5) possible future petitions following dismissal, (6) ability of a trustee to reach assets for the benefit of creditors, (7) maximizing the estate's value, (8) whether any issues would be better resolved outside of the bankruptcy forum, (9) whether the debtor has engaged in misconduct, (10) the prospect of payment of chapter 11 administrative expenses and nonpriority unsecured claims in Chapter 7, as opposed to dismissal, and (11) whether the powers and procedures of bankruptcy will only be used to benefit secured creditors without providing any

benefit to other creditors. In re McQuillen Place Co., LLC, 609 B.R. at 832; see also In re Francis, 2019 Bankr. LEXIS 826 (B.A.P. 1st Cir. Mar. 14, 2019); In re Andover Covered Bridge, LLC, 553 B.R. 162, 178 (1st Cir. 2016), In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 200-201 (Bankr. D. P.R. 2014), and In re Sandia Resorts, Inc., 562 B.R. at 496.

21. Creditors are better served by the course of action that results in the largest number of creditors being paid the largest amount of money, in the shortest period of time. In re McQuillen Place Co., LLC, 609 B.R. at 833; see also In re Aurora Memory Care, LLC, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018), and In re Rey, 2006 Bankr. LEXIS 1803 (Bankr. N.D. Ill. Aug, 21, 2006).

22. Creditors are often best at judging what is in their best interest, and when creditors agree the Bankruptcy Court should "accommodate their desire". In re McQuillen Place Co., LLC, 609 B.R. at 834, citing 7 L. King, et al., eds., Collier on Bankruptcy Para. 1112.04[6] at 1112-57 (15th ed. rev. 2006).

## ARGUMENT

**Failure to Meet Burden of Proof**

23. On April 5, 2022, the Bankruptcy Court entered the Order to Convert, found that that the U.S. Trustee met his burden proof under 11 U.S.C. § 1112(b), and that "cause" existed to convert the Debtor's Chapter 11 case to Chapter 7. As a result, the burden shifted to the Debtor to specifically identify "unusual circumstances establishing that converting the case is not in the best interest of creditors or the estate." See In re Baribeau, 603 B.R. 767, 802; and In re McQuillen Place Co., LLC, 609 B.R. 823, 829 (Bankr. N.D. Iowa 2019).

24. The Debtor has not presented any evidence to satisfy its burden that specifically identifies unusual circumstances establishing a conversion is not in the best interest of the Spitalny Creditors, any other creditor, or the estate. Instead the Debtor and U.S. Trustee entered into the

8

Stipulation. Yet nowhere in the Stipulation or the Motion to Dismiss has the Debtor offered any facts to meet its burden under 11 U.S.C. § 1112(b).

25. Based on the Debtor's failure to meet its burden of proof, and based on the Bankruptcy Court's Order to Convert, entered on April 5, 2022, the Motion to Dismiss must be denied.

**Factors Weigh in Favor of Conversion**

26. Despite the request by the U.S. Trustee and Debtor to dismiss the Chapter 11 case, several of the factors considered by other Courts clearly favor conversion to Chapter 7.

27. The Debtor does not operate a business. Based on Debtor's bankruptcy schedules and sworn testimony of CATIC it appears the Debtor has few tangible assets. The estate's primary assets are causes of action to turnover assets held by third parties, recover preferential transfers, and recover fraudulent transfers. Prior to bankruptcy the Debtor received $5,950,000 in cash. As of the Petition Date the Debtor held only $500, yet refuses to present any facts on how the money was spent, who received the funds, and why such parties received the funds. The best and most efficient way to find out what happened to $5,950,000, and recover the funds for the benefit of creditors would be the unique powers and rights afforded a bankruptcy trustee under Sections 542, 543, 547, and 548 of the Bankruptcy Code.

28. The Bankruptcy Court and Bankruptcy Code afford all creditors of the Debtor's estate more protection, and a more efficient and developed process to maximize the return of estate assets, in the shortest period of time. A Chapter 7 Trustee can conduct Rule 2004 examinations, subpoena bank records, financial records and non-privileged communications, demand the turnover of funds held by third parties, and recovery pre-petition preferential transfers and pre-petition fraudulent transfers. While creditors in state court can file fraudulent transfer actions, they

lack the unique statutory authority and powers under the Bankruptcy Code to recover funds that may have been inappropriately transferred to entities and persons who are not the Debtor's creditors, or who are creditors but may be insider, or who are non-insider creditors who must return funds under Section 547 of the Code. These powers do not exist under state law.

29. The prospect of paying creditors significantly diminishes if the Debtor's case is dismissed. Given the framework created by the Bankruptcy Code, and the years of experience of Chapter 7 trustees, the chance of recovering some or all of the $5,950,000 is very high in Chapter 7. The Massachusetts Superior Court does not share the unique structure, authority and experience offered by the Bankruptcy Court. A dismissal of the Chapter 11 case will delay all efforts to discover who received the funds, and will negatively impact any prospect of even a partial recovery. Further, a dismissal will eliminate any change of recovery any transfers to non-insiders during the ninety (90) days prior to bankruptcy, or perhaps more importantly transfers to insiders during the year prior to bankruptcy.

30. There are no known secured creditors or pre-petition priority creditors in the Debtor's estate. All efforts by a Chapter 7 Trustee, and all funds recovered by the Trustee will benefit holders of Chapter 11 administrative claims, and most importantly general unsecured creditors.

31. Weighing prejudice to the Debtor against the prejudice to the creditors favors conversion, not dismissal. The Debtor and the Debtor's transferees face significantly less prejudice if the Chapter 11 case is dismissed. Yet creditors of the Debtor's estate face significantly more prejudice if the Chapter 11 case is not converted and dismissed. The prospect of finding out where $5,900,000 went, who received the funds, and why is significantly greater in the Bankruptcy Court.


**Creditors Are the Best Judge of Their Best Interest**

32. While the Spitalny Creditors have the option of consenting to the Motion to Dismiss, and return to State Court to litigate their claims against the Debtor, they have not. Instead they strongly prefer the structure, laws, rules and process of the Bankruptcy Court, a Chapter 7 trustee, and application of bankruptcy law. The ability of a Chapter 7 trustee to discover and recover assets for the benefit of the Debtor's estate will result in the largest number of creditors being paid the largest amount of money, in the shortest period of time.

33. When a creditor does not object to the conversion of a case to Chapter 7, appointment of a trustee, and consent to the use of the creditors' assets to pay for the discovery and recovery of estate assets, the Bankruptcy Court should "accommodate the creditors desire." 7 L. King, et al., eds., Collier on Bankruptcy Para. 1112.04[6] at 1112-57 (15th ed. rev. 2006).

RELIEF REQUESTED

Samuel B. Spitalny, Jacob L. Spitlany and Stephen Quillian move the Bankruptcy Court to deny the United States Trustee's Assented to Motion to Approve Stipulation Dismissing Debtor's Chapter 11 Case, proceed with the evidentiary hearing on the United States Trustee's Second Motion to Convert Debtor's Chapter 11 Case to Chapter 7, and convert the Chapter 11 case of

Document      Page 12 of 14

Gotspace Data Equity Fund, LLC to Chapter 7.

        Respectfully submitted,

        SAMUAEL B. SPITALNY, JACOB L. SPITALNY
        and STEPHEN QUILLIAN

By:   /s/ Sean W. Gilligan_____
      Sean W. Gilligan, Esq. BBO 650374
      Gesmer Updegrove LLP
      40 Broad Street
      Boston, Massachusetts 02109
      Phone: (617) 350-6800
      Fax: (617) 350-6878
      email: sean.gilligan@gesmer.com
      Dated: April 26, 2022

CERTIFICATE OF SERVICE

I certify that on April 26, 2022, true and correct copies of the foregoing Objection were served by CM/ECF only upon the individuals who filed Notices of Appearances in the US Bankruptcy Court's CM/ECF database, including counsel for the Debtor.

Respectfully submitted,

SAMUAEL B. SPITALNY, JACOB L. SPITALNY and STEPHEN QUILLIAN

By:  /s/ Sean W. Gilligan
Sean W. Gilligan, Esq. BBO 650374
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Phone: (617) 350-6800
Fax: (617) 350-6878
email: sean.gilligan@gesmer.com
Dated: April 26, 2022

By CM/ECF

Eric K. Bradford on behalf of the U.S. Trustee
rrik.k.bradford@usdoj.gov

Gary M. Weiner on behalf of the Debtor
gweiner@weinerlegal.com

Robert Girvan on behalf of the Debtor
rgirvan@weinerlegal.com

David J. Reier on behalf of Raymond C. Green, Inc.
David.reier@afslaw.com

CERTIFICATE OF SERVICE

      I certify that on April 26, 2022, I discussed the Objection of the Spitalny Creditors with counsel to the U.S. Trustee, Erik Bradford, Esq.. The U.S. Trustee does not take a position on the Objection. I further certify that on April 25, 2022, I discussed the Objection of the Spitalny Creditors with counsel to the Debtor, Gary Weiner, Esq. The Debtor does not consent to the relief requested in the Objection.

Respectfully submitted,

SAMUAEL B. SPITALNY, JACOB L. SPITALNY
and STEPHEN QUILLIAN

By:   /s/ Sean W. Gilligan_____
Sean W. Gilligan, Esq. BBO 650374
Gesmer Updegrove LLP
40 Broad Street
Boston, Massachusetts 02109
Phone: (617) 350-6800
Fax: (617) 350-6878
email: sean.gilligan@gesmer.com
Dated: April 26, 2022